## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTINE BANCROFT,** | : | |
| | : | **CIVIL ACTION NO. 3:13-CV-1686** |
| Plaintiff | : | |
| | : | |
| **v.** | : | (MARIANI, J.) |
| | : | (SCHWAB, M.J.) |
| **COMMISSIONER OF SOCIAL** | : | |
| **SECURITY,** | : | |
| | : | |
| Defendant | : | |
| | : | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, Christine Bancroft, appeals from an adverse decision denying her applications for Disability Insurance Benefits ("DIB") and "Supplemental Security Income "SSI" under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* ("the Act").   Jurisdiction is conferred upon this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference).   For the reasons stated herein, I recommend that this case be **REMANDED**.

On June 7, 2010, Plaintiff protectively filed applications for DIB and SSI in which she alleged that she became totally disabled as of May 27, 2009, due to lower lumbar pain, and neck pain. *Tr.* 183.  Plaintiff's applications were denied initially on October 8, 2010.  In a pre-hearing memo dated December 7, 2011,

Plaintiff alleged the additional impairments of: lower back pain and disc herniation, bilateral upper and lower extremity numbness and tingling; carpal tunnel syndrome ("CTS"); headaches; depression; abdominal pain; sleep apnea; insomnia; and, obesity. *Tr.* 214.

On December 9, 2011, Plaintiff appeared and testified at a video hearing before Administrative Law Judge ("ALJ") Bruce S. Fein. *Tr.* 26-71. Plaintiff, represented by counsel, appeared in Binghamton, New York, while the ALJ presided from Syracuse, New York. *Id.* On April 20, 2012, the ALJ denied Plaintiff's applications for benefits in a written decision. *Tr.* 12-21. Plaintiff sought review of the ALJ's decision denying her applications for benefits by the Appeals Council. Her request for review was denied on May 29, 2013, making the ALJ's April 2010 decision the final decision of the Commissioner subject to judicial review pursuant to 42 U.S.C. § 405(g). 20 C.F.R. §§ 404.981, 416.1481; *Tr.* 1-6.

On June 21, 2013, Plaintiff initiated this action by filing a complaint in this Court seeking the award of benefits, or in the alternative, remand for a new administrative hearing pursuant to sentence four of 42 U.S.C. §405(g). *Doc.* 1. On September 5, 2013, the Commissioner filed an answer, and a copy of the administrative record. *Docs.* 9, 10. Having been fully briefed by the parties, *Docs.*11, 12, this appeal is now ripe for review and has been referred to the

undersigned magistrate judge for preparation of a report and recommended disposition.

## II.        FACTUAL BACKGROUND

Plaintiff's medical records reveal that she has been diagnosed with cervical and lumbar degenerative disc disease and spondylosis with radiculopathy, acute carpal tunnel syndrome, *Tr.* 265, and depression. *Tr.* 273-76, 284. At the hearing, Plaintiff reported that the pain in her lower back interfered with her ability to stand or walk for more than ten minutes at one time, or sit for more than twenty minutes at one time. *Tr.* 43. She also asserted that she had trouble lifting her arms, and was unable to carry a two liter bottle of soda due to numbness in her (left) dominant hand and that she was unable do more than write an address on an envelope before the onset of her symptoms. *Tr.* 50, 53. The transcript of Plaintiff's administrative hearing also reflects that she was shifting, leaning, stretching out her legs, and fidgeting with her hands to alleviate discomfort throughout the proceedings, and her attorney directed her to "focus" and she had difficulty recounting her work history despite having reviewed it with her attorney the evening before the hearing. *Tr.* 37, 48. Plaintiff also reported the medication side effects of sleepiness, confusion, poor focus, headaches and decreased appetite; though she admitted that she had not taken her pain medication on the date of her

hearing.  *Tr.* 47, 49.  She testified that, on a scale of one (mild pain) to ten (extreme pain requiring hospitalization), her pain was usually a five or six.  *Tr.* 47-48.

With respect to the objective medical evidence of record a nerve conduction study performed on January 7, 2011, revealed evidence of left ulnar neuropathy at the elbow.  *Tr.* 430-31. An imaging study of Plaintiff's cervical spine taken on February 25, 2009, revealed straightening of the normal lordosis and narrowing of the C5-6 disc, but the neural foramen were not narrowed and there was no fracture of dislocation.  *Tr.* 373.  An MRI of Plaintiff's cervical spine taken on November 28, 2011, was similar to the 2009 study except that it revealed a new asymmetric disc osteophyte complex to the left at the C4-C5 level causing moderate narrowing of the left neural foramina with potential impact on the exiting left C5 nerve root. *Tr.* 428.

An imaging study of Plaintiff's thoracic spine performed on July 17, 2008, two weeks after she sustained an injury by falling down the stairs, revealed a mild superior end-plate depression of T6 which could represent an acute fracture.  *Tr.* 375.  An imaging study of Plaintiff's lumbar spine taken on July 17, 2008, two weeks after Plaintiff sustained an injury falling down the stairs, revealed no acute bony injury, but did reveal narrowing of L1-2 and L2-3 discs; there was no pedicle erosion, spondylosis or spondylolisthesis, and sacroiliac joints were intact.  *Tr.* 374.  An MRI of Plaintiff's lumbar spine taken on March 6, 2009, revealed the

impression of small central disc protrusion as well as an annular tear at the L4-L5 level causing minimal mass effect on the thecal sac and no definitive nerve root compression.  *Tr.* 370. An MRI taken of Plaintiff's lumbar spine on January 7, 2010, revealed no significant interval change since the prior study, unchanged small central disc herniation as well as an annular tear at the L4-L5 level.  *Tr.* 366. An MRI of Plaintiff's lumbar spine performed on November 28, 2011, revealed no significant changes since the prior study in January 2010.  *Tr.* 432-33.

On September 24, 2010, internist Sandra Boehlert, M.D., conducted a consultative examination of Plaintiff and prepared a report that was commissioned by the Social Security Administration.  *Tr.* 382-85.  Dr. Boehlert diagnosed right lumbar radiculopathy, neck pain (musculoskeletal in nature), hand and foot numbness (unclear etiology), and a "rule out" diagnosis of spinal stenosis.  *Id.*  Dr. Boehlert noted that Plaintiff was not currently taking any medications, had a normal gait, was able to walk on heels, toes and rise from a chair without difficulty, squat full, and needed no help changing or getting on or off the exam table.  *Id.*  Dr. Boehlert also noted that Plaintiff had intact hand and finger dexterity and 5/5 grip strength.  *Id.*  In a section of her reported entitled "medical source statement," Dr. Boehlert wrote "there is moderate limitation to any heavy exertion or heavy ambulation.  There is mild limitation to repetitive bending and twisting of the cervical spine."  *Id.*

In November 2011, treating pain management specialist Xiao Fang, M.D., completed a questionnaire on the subject of Plaintiff's physical limitations between October 2010 and November 2011 due to her cervical and lumbar spondylosis. *Tr.* 396-97.   Dr. Fang reported that Plaintiff could sit for six hours per eight-hour workday and stand for at least two hours per workday, but must alternate between sitting and standing, and could safely lift over ten pounds up to three hours per workday without causing worsening of her condition or excessive pain on a daily basis.   *Id.*   Dr. Fang opined that, assuming Plaintiff were to return to work allowing for a sit-stand option, Plaintiff would need more than one ten minute break per hour in addition to a thirty minute lunch break.  *Id.*  Dr. Fang also opined that if Plaintiff attempted sedentary work on a sustained basis (eight hours per day, forty hours per week) her condition would likely result in four or more absences per month. *Id.*  Dr. Fang noted that Plaintiff had moderate difficulties[1] in the areas

---

[1] The questionnaires completed by Dr. Fang,  Dr. Giannone and nurse practitioner Gates-Maby required them to assess Plaintiff's abilities in the above-mentioned work areas in terms of whether she had a mild, moderate, or severe limitation.  The terms mild, moderate and severe were defined as follows:  Mild – function is slightly impaired creating less than a 20% diminishment in ability to function; Moderate – creating a limitation of function in the area of 20% or greater but not precluding the function; and Severe – ability to function in this area, though not totally precluded, is severely restricted causing more than a 33% disruption in the person's ability in this area.  *Tr.* 397, 400.

of concentration and sustaining work pace due to her physical impairments, and that her medications caused Plaintiff to be fatigued.[2]  *Id.*

Also in November 2011, Plaintiff's primary care physician, Dr. John Giannone, M.D., and treating nurse practitioner Tiffany Gates-Maby completed a questionnaire on the subject of Plaintiff's physical limitations between July 2008 through November 2011 due to her impairments of degenerative disc disease, annular tear, and herniated disc.  *Tr.* 399-401.  Dr. Giannone, and nurse practitioner Gates-Maby reported that Plaintiff could sit for less than six hours per eight-hour workday, and must alternate between sitting and standing, but was unable to stand for two hours per eight-hour workday, and could safely lift up to five pounds up to three hours per workday without causing worsening of her condition or excessive pain on a daily basis.  *Id.*  Dr. Giannone and nurse practitioner Gates-Maby opined that, assuming Plaintiff was to return to work allowing for a sit-stand option, Plaintiff would need complete freedom to rest frequently.  *Id.*  Dr. Giannone and nurse practitioner Gates-Maby also opined that if Plaintiff attempted sedentary work on a sustained basis (eight hours per day, forty hours per week) her condition would likely result in four or more absences per month. *Id.*  Dr. Giannone and nurse practitioner Gates-Maby also noted that

---

[2] In December 2010, June 2011, and August 2011, Dr. Fang completed forms for the Broome County Department of Social Services. *Tr.* 391-94. On each form, Dr. Fang opined that Plaintiff would be unable to pursue any work-related activity for at least three months due to her neck and back pain. *Id.*

Plaintiff had moderate difficulty in the area of concentration and severe difficulty sustaining work pace due to her physical impairments, and that her medications caused fatigue, sleepiness, and nausea.[3] *Id.*

## III.      SUMMARY OF THE ADMINISTRATIVE DECISION

To receive benefits under Title II of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).  Furthermore:

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work

---

[3] In November 2010, nurse practitioner Gates-Maby completed a form for the Broome County Department of Social Services. *Tr.* 395.  Nurse practitioner Gates-Maby opined that Plaintiff would be unable to pursue any work-related activity for an indefinite period of time due to her chronic lumbar pain and degenerative disc disease. Nurse Practitioner Gates-Maby also noted that Plaintiff had a "moderate limitation to heavy exertion or heavy ambulation and repetitive bending and twisting."  *Id.*   I note that the language used by Nurse Practitioner Gates-Maby is identical to that used by Dr. Boehlert in September 2010.

> which exists in significant numbers either in the region where such
> individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).  In addition to the above-listed requirements, under Title II of the Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).  In contrast, Title VXI is a needs-based program, therefore a claimant's insured status is not considered in determining a claimant's eligibility for benefits.

It is the responsibility of the ALJ to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.  In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  As part of this analysis the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  *See* 20 C.F.R. §§ 404.1520, 416.920.  If the ALJ finds that a claimant is disabled or not disabled at any point in the sequence, review does not proceed any

further.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Moreover, between steps three and four of this process, the ALJ must determine the claimant's residual functional capacity (RFC) as described by 20 C.F.R. §§ 404.1545 and 416.945.  20 C.F.R. §§ 404.1520(e), 416.920(e).

The claimant bears the initial burden of demonstrating that he or she has a medically determinable impairment that prevents him or her from engaging in past relevant work.   42 U.S.C. §§ 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §§ 404.1512, 416.912.  Once the claimant has satisfied her burden at steps one through four, it is incumbent upon the ALJ to show that jobs exist in the national economy that the claimant could perform that are consistent with his or her age, education, work experience, and RFC.  20 C.F.R. §§ 404.1512, 416.912.

Plaintiff was born on February 26, 1976, and was 33 years old on her alleged onset date.  *Tr.* 19.  The ALJ classified her as a "younger person" under the Social Security regulations; therefore her age was considered to present little or no barrier to her adjustment to alternative employment.   *See* 20 C.F.R. §§ 404.1563(c), 416.963(c); *Tr.* 19.  The ALJ also found that Plaintiff has a limited education, and was able to communicate in English.    *See* 20 C.F.R. §§404.1564(b)(3), 416.964(b)(3); *Tr.* 19.

In his decision, the ALJ completed steps one through five of the five-step sequential evaluation process. He found that Plaintiff met the insured status requirements of the Act through June 30, 2014, but concluded that Plaintiff was not under a disability, as defined by the Act, at any time from Plaintiff's alleged onset date of May 27, 2009, through April 20, 2012, the date of his decision. *Tr.* 14, 20.

At step one of his analysis, the ALJ found that Plaintiff had not engaged in any substantial gainful activity from her alleged onset date of May 27, 2009, though the date of his decision. *Tr.* 14. At step two of his analysis, the ALJ found that Plaintiff had the medically determinable severe impairment of cervical and lumbosacral degenerative disc disease and spondylosis with radiculopathy, but that her alleged impairments of abdominal pain and depression were medically determinable but non-severe.[4] *Tr.* 14-16. The ALJ also found that Plaintiff's alleged impairments of carpal tunnel syndrome, sleep apnea/insomnia, left knee

---

[4] In evaluating Plaintiff's alleged impairment of depression at step two, the ALJ noted that Plaintiff had been diagnosed with and treated for depression by her primary care physician and nurse practitioner, but the clinical findings were essentially benign. Furthermore, in evaluating Plaintiff's level of functioning in the four broad functional area as set out in the Social Security regulations for evaluating mental disorders, the ALJ found that Plaintiff's alleged impairment of depression resulted in: no restriction of activities of daily living; no difficulties in social functioning; mild difficulties in concentration, persistence or pace; and no episodes of decompensation of extended duration. *Tr.* 16. Pursuant to 20 C.F.R. §§404.1520a(d)(1) and 416.920a(d)(1), a medically determinable mental impairment is "non-severe" where it causes no more than "mild" limitation in any of the first three functional areas and no episodes of decompensation of extended duration in the fourth.

pain, and obesity were not medically determinable. *Tr.* 15. At step three, the ALJ found that Plaintiff's severe impairment did not meet or medically equal listing 1.04. *Tr.* 16.

Before beginning step four, the ALJ, found that Plaintiff had the requisite RFC to:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of six hours and sit for a total of six hours in an eight-hour workday. The claimant can also occasionally climb, balance, stoop, kneel, crouch, and crawl.

*Tr.* 17. The ALJ based the above RFC assessment on his consideration of the record as a whole, which included: Plaintiff's subjective testimony; medical examination records from multiple treating sources; medical source statements by treating pain management specialist Xiao Fang, M.D. and Plaintiff's primary care physician John Giannone, M.D.; and, the report of consulting internist Sandra Boehlert, M.D.

At step four of his analysis, the ALJ found that Plaintiff could no longer perform her past relevant work as a home health aide or cashier/food preparer at a fast food restaurant due to her inability to lift more than twenty pounds. *Tr.* 19. At step five of his analysis the ALJ found that considering Plaintiff's age (younger person), education (limited), work experience (unskilled), the above RFC, Plaintiff was not disabled pursuant to Medical Vocational Rule 202.17. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2; Tr. 20. The ALJ noted that the limitation in

Plaintiff's abilities to climb, balance, stoop, kneel, crouch, and crawl had very little effect on the light, unskilled occupational base. *Id.*

## IV. DISCUSSION

Plaintiff asserts that the ALJ's step five decision is unsupported by substantial evidence because he failed to account for the effect of limitations to Plaintiff's abilities to concentrate and maintain a steady work pace in his RFC assessment. *Doc.* 11 p. 18-21. As discussed above, these limitations were supported in medical source statements by two treating sources – Drs. Fang and Giannone. The only other medical source in the record, one-time consultative examiner Dr. Boehlert, did not address the issue of any limitation in the above-mentioned areas. In his decision, the ALJ accurately noted that Plaintiff's medication side-effects included sleepiness, confusion, poor focus, headaches and decreased appetite. *Tr.* 17. He then noted that the record as a whole did not support limitations beyond those provided in his RFC assessment, which did not account for any limitation in pace or concentration.[5] The Commissioner argues

---

[5] A claimant's impairment, and any related symptoms, may cause physical or mental limitations that affect the activities he or she can accomplish in a work setting. *See* 20 C.F.R §§ 404.1545, 416.945. Moreover, the type, dosage, effectiveness, and side-effects of a claimant's medications are important indicia of the intensity and persistence of a claimant's symptoms, and is one of the factors that an ALJ is directed to consider when assessing a claimant's overall credibility. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); *see also* SSR 96-7p. The ALJ's improper rejection of the medical opinion evidence addressing these alleged limitations similarly undermines the ALJ's credibility assessment.

that the ALJ's finding that Plaintiff could perform light work is supported by substantial evidence and must be affirmed.  I have reviewed the record, however, and am convinced that the ALJ's rejection of the opinions of Drs. Fang and Giannone with respect to these limitations is unsupported.

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this Court. Once the ALJ has made a disability determination, it is the responsibility of this Court to independently review that finding.  This task requires the application of a specific, well-settled, and carefully articulated standard of review.  Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review.  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).  When reviewing the denial of disability benefits, this Court's review is confined to the issue of whether the ALJ's decision is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *see also Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Johnson*, 529 F.3d at 200 (*quoting Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer*, 186 F.3d at 427 (*quoting Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064-66 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The ALJ rejected the opinions of Drs. Fang and Giannone that Plaintiff had moderate to severe limitations in concentration and pace – e.g., that she would be

unable to perform these functions for 20% or more of each workday – because the opinions were "too inconsistent" with the record. *Tr.* 19. In support of this determination, the ALJ cited to: an August 12, 2010, notation by a non-medical disability examiner that no limitations in concentration were perceived during "limited phone contact," *Tr.* 173; the consultative examination report by Dr. Boehlert; and, treatment notes by the pain management specialist who administered Plaintiff's lumbar injections, Sajid A. Kahn, M.D., where it was noted, that Plaintiff's memory was "intact" on October 19, 2011, and November 28, 2011. *Tr.* 419, 426. Evidence is not substantial, however, where it is "overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000)(*quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

Furthermore, when evaluating opinions by a treating source, it is well-established that the ALJ accord treating physicians' reports great weight, especially when such opinions reflect expert judgment based on a continuing observation over an extended period of time. *See Id.* at 317; *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)). An ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence.'" *Id* at 317-18 (*quoting Plummer*, 186 F.3d at 429). The

notation of the non-medical disability examiner is not medical evidence.   Dr. Boehlert's report is silent on the issue of whether Plaintiff's pain and medication side-effects could result in any limitation in the areas of concentration or pace and thus it does not contradict the opinions of Drs. Fang and Giannone.   Furthermore, Dr. Kahn's cursory note that Plaintiff's memory was "intact" on two occasions does not justify the outright rejection of Drs. Fang and Giannone's opinions that Plaintiff had a moderate to severe limitation in the areas of concentration and pace.

Accordingly I find that the ALJ's outright rejection of the opinion of Drs. Fang and Giannone with respect to the alleged cognitive limitations renders his decision at step five unsupported, and recommend that the final decision of the Commissioner be **VACATED** and this case be **REMANDED** for a new hearing. On remand the Commissioner should be free to further develop the record as she deems necessary.

Because I recommend that this case be remanded for further proceedings, I find that it is unnecessary to address Plaintiff's remaining contentions that the ALJ improperly concluded that her impairment of depression was non-severe, failed to develop the evidentiary record with respect to Plaintiff's mental impairment, failed to consult a VE, and improperly applied the grids to conclude that Plaintiff was not disabled.   Such deficiencies, if they exist, can be remedied in a future decision.

## V.    RECOMMENDATION

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the decision of the Commissioner be **VACATED** and this case be **REMANDED** for further proceedings consistent with this report.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of September 2014.

*S/Susan E.  Schwab*
Susan E. Schwab
United States Magistrate Judge
